USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/23/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASBRINDER SAHNI,

                Plaintiff,

    -against-

STAFF ATTORNEYS ASSOCIATION,
NATIONAL ORGANIZATION OF LEGAL
SERVICES WORKERS, and LEGAL SERVICES
OF THE HUDSON VALLEY,

                Defendants.

No. 14-cv-9873 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

       Plaintiff Jasbrinder Sahni, a former employee of Defendant Legal Services of the Hudson

Valley ("LSHV"), initiated the instant action against LSHV, the Staff Attorneys Association

("SAA"), and National Organization of Legal Services Workers ("NOLSW")[1] (collectively,

"Defendants"). The complaint (ECF No. 1, or the "Complaint") asserts the following causes of

action: (1) breach of the duty of fair representation for failing to properly grieve Plaintiff's

termination, as against the Union ("Termination DFR Claim") (Compl. ¶ 32); (2) breach of the

duty of fair representation for failing to properly grieve Plaintiff's involuntary transfer and

subsequent suspension, as against the Union ("Manner of Arbitration DFR Claim") (*Id.* ¶ 35); (3)

breach of the duty of fair representation in unreasonably delaying arbitration of Plaintiff's

grievances, as against the Union ("Arbitration Delay DFR Claim") (*Id.* ¶ 37); (4) breach of the

CBA arising out of Plaintiff's termination, as against LSHV (*Id.* ¶ 39); (5) violations of § 8303-

---

[1] Although the Complaint names the SAA and NOLSW as distinct defendants, in their motion to dismiss, SAA and NOLSW indicate that they are not distinct legal entities—SAA is the name of NOLSW's bargaining unit at LSHV. (ECF No. 26 at 1, n. 1.) For ease of reference, the Court will refer to SAS and NOLSW collectively as the "Union."

a[2] of the New York State Civil Practice Law and Rules ("CPLR") and New York State's Rules of the Chief Administrator of the Courts 22 N.Y.C.R.R. § 130-1.1 ("NYCRR") for aiding and abetting the Union's delay of arbitrations, as against LSHV (*Id*. ¶ 40); (6) a fraud claim, as against LSHV and the Union (*Id*. ¶ 42); and (7) breach of the implied covenant of good faith, as against LSHV and the Union (*Id*. ¶ 43).  Before the Court are Defendants' motions to dismiss (ECF No. 15 ("LSHV Motion") and ECF No. 24 ("Union Motion")).  For the following reasons, Defendants' motions are GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are derived from the Complaint unless otherwise noted and are taken as true for the purposes of these motions.[3]

Plaintiff is a former employee of LSHV and member of the Union.  (Compl. ¶¶ 1–2.)  In May 2008, Plaintiff was employed as a staff attorney at LSHV in its White Plains office.  (*Id*. ¶ 7.)  The terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement (the "CBA").  (*Id*.; Union Exhibit A; LSHV Exhibit C.)  In December 2011, Plaintiff was transferred involuntarily to the Mount Vernon office of LSHV.  (Compl. ¶ 8.)

---

[2] Though the Complaint alleges a violation of Section 8303, not 8303-a, it appears that Plaintiff in fact intended to allege a violation of Section 8303-a.

[3] Plaintiff spends a good portion of his opposition brief reciting new facts not contained in the Complaint.  (*See* Pl.'s Opp. at 3–15.)  Though *pro se* litigants typically are subject to a more liberal pleading standard, which enables courts to consider factual allegations raised for the first time in briefs opposing motions to dismiss (*see Collins v. Goord*, 438 F. Supp. 2d 399, 403, n.1 (S.D.N.Y. 2006) (collecting cases)), attorneys proceeding *pro se* are not afforded the same latitude.  *See Ivchencko v. Glob. MRV, Inc.*, No. 11-cv-4247 (SJF) (GRB), 2013 WL 685379, at *3 (E.D.N.Y. Feb. 4, 2013) *report and recommendation adopted sub nom. Ivchenko v. Glob. MRV, Inc.*, No. 11-cv-4247 (SJF) (GRB), 2013 WL 685906 (E.D.N.Y. Feb. 22, 2013).  Consequently, the Court will confine its understanding of the relevant facts to those contained in the Complaint, those documents the Court deems incorporated by reference, and documents of which the Court may take judicial notice.  *See Universal Trading & Inv. Co. v. Tymoshenko*, No. 11-cv-7877 (PAC), 2012 WL 6186471, at *1 (S.D.N.Y. Dec. 12, 2012) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (internal quotations omitted) (holding that factual assertions raised for the first time in a plaintiff's opposition papers, including supporting affidavits and exhibits, are not properly considered by the Court on a motion to dismiss "as that would constitute 'improper[] reli[ance] on matters outside the pleadings.'").

The Union grieved Plaintiff's involuntary transfer on his behalf (the "involuntary transfer grievance"), but the grievance was denied.  (*Id*.)  Subsequently, the Union sought arbitration of the involuntary transfer grievance.  (*Id*.)  On April 7, 2012, Plaintiff was suspended without pay.  (*Id*. ¶ 9.)  The Union grieved Plaintiff's suspension (the "suspension grievance"), which also was denied.  (*Id*.)  Thereafter, the Union sought arbitration of the suspension grievance.  (*Id*.)

Between June 2012 and February 2013, the Union made repeated representations to Plaintiff that it was pursuing arbitration of the involuntary transfer grievance and the suspension grievance.  (*Id*. ¶ 10.)  In particular, the Union scheduled meetings with Plaintiff to prepare him for arbitration and discuss document productions from LSHV.  (*Id*. ¶ 11.)  During that time, Plaintiff made several requests that the Union provide him with the notice of arbitration; however, Plaintiff never received the notice and complained to the Union's regional director in February 2013.  (*Id*. ¶¶ 12–13.)  Finally, in February 2013, the Union filed a notice of arbitration with the American Arbitration Association ("AAA") and provided a copy to Plaintiff.  (*Id*. ¶ 14.)

When the Union continued to fail to provide Plaintiff with an update about the arbitrations, Plaintiff, in or about June 2013, filed a charge with the National Labor Relations Board ("NLRB").  (*Id*. ¶¶ 15–16.)  After Plaintiff filed the NLRB charge, the Union became more proactive about the arbitrations and provided a list of potential arbitrators to Plaintiff.  (*Id*. ¶ 16.)  In response, Plaintiff withdrew his NLRB charge.  (*Id*.)

In December 2013, LSHV filed a petition in New York State Supreme Court, Westchester County, for an order seeking a stay of the arbitrations.  (*Id*. ¶ 17.)  Plaintiff contends that the stay petition was filed in "collusion" with the Union to further delay the arbitrations.  (*Id*. ¶ 18.)  In January 2014, the Union informed Plaintiff that LSHV was withdrawing the stay petition, though Plaintiff asserts that the stipulation regarding withdrawal of the stay petition was

not timely filed, causing further delay.  (*Id.* ¶¶ 19–20.)  After the stipulation was filed, Plaintiff

alleges that the Union and LSHV continued to delay the arbitrations, including missing deadlines

set by the AAA.  (*Id.* ¶ 21.)

In or about April 2014, Plaintiff filed a second NLRB charge.  (*Id.* ¶ 22.)  After the

charge was filed, the Union informed Plaintiff that a hearing date for the arbitration was

scheduled for September 19, 2014.  (*Id.* ¶ 22.)  The Union told Plaintiff that it was requesting

documents from LSHV in preparation for the hearing and informed Plaintiff that the arbitrator

would hold a preliminary hearing to discuss document requests.  (*Id.*)  Plaintiff then withdrew

the second NLRB charge.  (*Id.*)  Plaintiff later learned that the Union neither requested

documents from LSHV nor requested that the arbitrator schedule a preliminary hearing.  (*Id.* ¶

23.)

On September 17, 2014, Plaintiff was informed that the Union and LSHV had adjourned

the previously scheduled arbitrations.  (*Id.* ¶ 25.)  The Union has since refused to update Plaintiff

regarding rescheduling the arbitrations and has failed to take reasonable steps to ensure that the

arbitrations are not further delayed.  (*Id.* ¶¶ 26–27.)

On September 24, 2014, LSHV terminated Plaintiff's employment.  (*Id.* ¶ 28.)  Though

Plaintiff requested the Union grieve his termination, the Union declined to do so, letting the 45-

day period grievance period provided for by the CBA lapse.  (*Id.* ¶¶ 29–30.)  The Union did not

provide Plaintiff an explanation for its decision not to grieve Plaintiff's termination.  (*Id.* ¶ 30.)

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).  A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).  "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).  While courts generally review *pro se* pleadings liberally, "licensed attorneys proceeding *pro se* need not be afforded the same" liberal standard. *Smith v. New York Presbyterian Hops.*, 254 Fed. App'x 68, 70 (2d Cir. 2007).

## DISCUSSION

### I.  Consideration of Exhibits Submitted by the Parties on the Instant Motion

As an initial matter, the Court must decide whether it can consider and/or take judicial notice of certain documents submitted by the parties.

LSHV has submitted the following documents with its motion, all annexed to the Affirmation of Tarek M. Maheran, Esq. (ECF No. 16): the summons and Complaint (LSHV Ex. A); January 16, 2015 letter from Plaintiff to the Court (LSHV Ex. B)[4]; the CBA (LSHV Ex. C); April 11, 2012 letter from LSHV Executive Director Barbara Finkelstein to Plaintiff regarding

---

[4] *See* Section V.B *infra* for a discussion of Plaintiff's January 16, 2015 letter.

Plaintiff's suspension (LSHV Ex. D); documents pertaining to the assessment of Plaintiff's complaint with the New York State Division of Human Rights ("NYSDHR") (LSHV Exs. E–J); documents pertaining to Plaintiff's Article 78 proceeding (LSHV Exs. K–M); Plaintiff's notice of appeal of the Article 78 proceeding (LSHV Ex. N); August 23, 2013 letter from the AAA to the Union and LSHV regarding a demand for arbitration of Plaintiff's involuntary transfer and suspension grievances (LSHV Ex. O); LSHV's petition for an order staying arbitration (LSHV Ex. P); stipulation of discontinuance and LSHV's agreement to arbitrate (LSHV Ex. Q); email correspondence between LSHV and the Union regarding the arbitration (LSHV Ex. R); October 30, 2014 notice of arbitration hearing (LSHV Ex. S); September 24, 2014 memorandum regarding Plaintiff's termination from LSHV (LSHV Ex. T); and an October 5, 2014 grievance notice from Plaintiff to LSHV Executive Director Barbara Finkelstein regarding Plaintiff's termination (LSHV Ex. U).

The Union also submitted certain documents, annexed to the Declaration of Jeremy E. Meyer, Esq. (ECF No. 25): the CBA (Union Ex. A)[5]; January 25, 2012 email from the Union to LSHV Executive Director Barbara Finkelstein detailing Plaintiff's involuntary transfer grievance (Union Ex. B); June 5, 2012 email from the Union to LSHV Executive Director Barbara Finkelstein regarding notice of intention to arbitrate LSHV's determination of Plaintiff's involuntary transfer grievance (Union Ex. C); April 22, 2012 notice of grievance regarding Plaintiff's suspension, among other things (Union Ex. D); July 6, 2012 email from the Union to LSHV Executive Director Barbara Finkelstein regarding notice of intention to arbitrate LSHV's determination of Plaintiff's suspension grievance (Union Ex. E); August 23, 2013 letter from the AAA to the Union and LSHV regarding a demand for arbitration of Plaintiff's involuntary

---

[5] Union Exhibit A is the same document as LSHV Exhibit C.

transfer and suspension (Union Ex. F)[6]; July 11, 2013 letter from the NLRB to the Union

regarding Plaintiff's NLRB charge that the Union refused to process Plaintiff's suspension

grievance (Union Ex. G); May 21, 2014 letter from the NLRB to the Union regarding Plaintiff's

NLRB charge that the Union refused to process Plaintiff's suspension grievance (Union Ex. H);

October 30, 2014 notice of arbitration hearing (Union Ex. I)[7]; December 16, 2014 letter from the

Union's grievance committee to Plaintiff regarding recommendation that Union decline to file a

grievance regarding Plaintiff's termination (Union Ex. J); and an October 5, 2014 grievance

notice from Plaintiff to LSHV Executive Director Barbara Finkelstein regarding Plaintiff's

termination (Union Ex. K).[8]

        Plaintiff has submitted the following with his declaration in opposition to the motions

(ECF No. 29): the Complaint (Pl. Ex. 1)[9]; Plaintiff's affidavit submitted in opposition to the

motion to dismiss filed in related case No. 14-cv-1616 (NSR) (Pl. Ex. 2); Plaintiff's brief

submitted in the Article 78 proceeding appealing the Supreme Court's dismissal of Plaintiff's

appeal of the decision of New York State's Division of Human Rights finding no probable cause

to believe LSHV engaged in unlawful retaliation and/or discrimination (Pl. Ex. 3); Affirmation

of Tarek M. Maheran (LSHV's counsel) submitted in support of LSHV's order to show cause

seeking permanent stay of arbitration demanded by the Union (Pl. Ex. 4); the Union's brief

opposing LSHV's motion to stay arbitration proceedings (Pl. Ex. 5); and a series of documents

pertaining to arbitration of Plaintiff's grievances (Pl. Ex. 6).

---

[6] Union Exhibit F is the same document as LSHV Exhibit O.

[7] Union Exhibit I is the same document as LSHV Exhibit S.

[8] Union Exhibit K is the same document as LSHV Exhibit U.

[9] Both LSHV Exhibit A and Plaintiff Exhibit 1 are the Complaint.  Of course, the Court will consider the Complaint
in deciding the motions to dismiss.

On a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [or] documents 'integral' to the complaint and relied upon in it . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see Manley v. Utzinger*, No. 10-cv-2210 (LTS)(HBP), 2011 WL 2947008, at *1 n. 1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit."). One way a document may be deemed incorporated by reference is where the complaint "refers to" the document. *EQT Infrastructure Ltd. v. Smith,* 861 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2012). "A mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner Inc*., 440 F. App'x 7, 9 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). *See also Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir. 1985) ("The documents here were to some extent quoted, but limited quotation does not constitute incorporation by reference."). Moreover, a document may be incorporated when a plaintiff had possession or knowledge of the document, upon which they relied in drafting the complaint. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (holding the complaint is deemed to include "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit."). *See also Cortec Indus., Inc. v. Sum Holding L.P*., 949 F.2d 42, 48 (2d Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

A court additionally may consider a document not incorporated by reference into the complaint "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). "A document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff *relied* on the document in preparing his complaint." *Williams v. City of New York*, No. 14-cv-5123 NRB, 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015) *reconsideration denied sub nom. Williams v. The City of New York*, No. 14-cv-5123 NRB, 2015 WL 5190586 (S.D.N.Y. Sept. 3, 2015).

The Court also may consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman*, 568 F. App'x at 43.  Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  The Second Circuit is clear that courts may "look to public records, including complaints filed in state court, in deciding a motion to dismiss."  *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citing *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); *Chambers v. Time Warner Cable, Inc.*, 282 F.3d 147, 152–54 (2d Cir. 2002); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).  "In the motion to dismiss context, a court should generally take judicial notice to determine what statements the documents contain, not for the truth of the matters asserted." *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 412 (S.D.N.Y. 2011) (internal quotation marks and alterations omitted). Thus, the Court

does not attempt to discern the truth of any statements contained in these exhibits, but rather simply takes judicial notice of the statements they contain.

LSHV Exhibit C/Union Exhibit A is the operative CBA.  Because the Complaint makes repeated references to the CBA (*see* Compl. ¶¶ 7, 30, 32, 35, 37, 39, 43) and Plaintiff obviously relied on the CBA in bringing his claims, the Court will consider the CBA.

LSHV Exhibit D is the April 2012 suspension notice.  While the Complaint does reference Plaintiff's suspension (Compl. ¶ 9), the Court finds that the suspension notice itself is not integral to Plaintiff's complaint.  The Complaint does not heavily rely upon the contents of the suspension notice—Plaintiff's suspension is merely one of the bases for his grievance against LSHV.  Relatedly, the Court finds that it may not consider LSHV Exhibit T, Plaintiff's termination notice.  It cannot be said that Plaintiff relied heavily on the terms and effects of the termination notice—essentially its content—in drafting the Complaint.

The Court also declines to consider LSHV Exhibit U/Union Exhibit K—Plaintiff's October 5, 2014 notice of intention to grieve his termination.  Nowhere in the Complaint is there a reference to this notice; in fact, the Complaint only states that Plaintiff was terminated and requested the Union grieve his termination.  (Compl. ¶¶ 28–29.)  Additionally, consideration of Union Exhibit J (Union's notice to Plaintiff declining to grieve Plaintiff's termination) is not proper because, in essence, the Union asks the Court to weigh evidence that tends to disprove Plaintiff's allegations.  (*See* Compl. ¶ 30.)  The Court will not undergo such an exercise, which is clearly improper on a motion to dismiss.

LSHV and the Union request that this Court take judicial notice of certain state administrative records: LSHV Exhibit E (NYSDHR complaint); LSHV Exhibit H (NYSDHR determination and order); LSHV Exhibit J (letter from NYSDHR to Plaintiff re final

determination and order); and Union Exhibits G and H (NLRB charges). Courts in this District routinely take judicial notice of state administrative records, including NYSDHR records and NLRB charges; therefore, the Court will take judicial notice of LSHV Exhibits E, H, and J and Union Exhibits G and H. *See Benjamin v. City of Yonkers*, No. 13-cv-8699 (VB), 2014 WL 6645708, at *1, n.1 (S.D.N.Y. Nov. 24, 2014) (citing *Vargas v. Reliant Realty*, No. 13-cv-2341 (PGG), 2014 WL 4446165, at *1, n.2 (S.D.N.Y. Sept. 9, 2014); *Evans v. N.Y. Botanical Garden*, No. 02-cv-3591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002)). *See also Ganny v. F.J.C. Sec. Servs., Inc.*, No. 15-cv-1965 (JG) (JO), 2015 WL 4600745, at *1, n.3 (E.D.N.Y. July, 28, 2015) (taking judicial notice of NLRB charge and considering it on motion to dismiss) (citing *Kavowras v. The New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003)).

As for LSHV Exhibits F, G, and I, however, it is not clear on their face that they are part of the administrative record, nor does LSHV proffer any sort of showing that these documents are publicly available. Therefore, the Court will not take judicial notice of those exhibits.

Similarly, the Court also takes judicial notice of LSHV Exhibit K (amended verified petition filed by Plaintiff in Article 78 proceeding seeking review of NYSDHR's final determination and order); LSHV Exhibit M (Supreme Court's decision in Article 78 proceeding); LSHV Exhibit N (Plaintiff's notice of appeal of the Supreme Court's decision in the Article 78 proceeding); LSHV Exhibit O (LSHV's petition seeking stay of arbitration); and LSHV Exhibit Q (so ordered stipulation of discontinuance and agreement to arbitrate), which are clearly part of the records from related court proceedings, but declines to take judicial notice of LSHV Exhibit L (LSHV's memo of law opposing Plaintiff's petition for review of NYSDHR final determination and order). *See Bentley v. Dennison*, 852 F. Supp. 2d 379, 382, n. 5 (S.D.N.Y. 2012) *aff'd sub nom. Betances v. Fischer*, 519 F. App'x 39 (2d Cir. 2013).

11

As for LSHV Exhibit O/Union Exhibit F; LSHV Exhibit R; LSHV Exhibit S/Union

Exhibit I; and Union Exhibits B–E, these documents cannot be integral to the Complaint because

they are not documents of which Plaintiff necessarily had knowledge or notice, including email

correspondence between the Union and LSHV only.  Without such knowledge or notice, it would

be impossible for Plaintiff to "rely heavily on the terms and effects" of the documents in drafting

the Complaint. *See DiFolco,* 622 F.3d at 111.

Finally, the Court turns to Plaintiff's proffered documents.  The Court declines to

consider Plaintiff Exhibit 2, which is an affidavit Plaintiff submitted in opposition to a motion to

dismiss in a related case before this Court, No. 14-cv-1616 (NSR).  In light of the fact that

Plaintiff submitted an affidavit in this case relating to the instant motions, the Court finds it

unnecessary to also consider Plaintiff's affidavit submitted in a different case alleging different

claims.  As for Plaintiff Exhibits 3–6, because these documents do not appear, from the

allegations in the pleadings, to be integral to the Complaint and are not incorporated into the

Complaint by reference or attached to it, the Court will not consider the extrinsic evidence

contained in these specific exhibits on the instant motions.

## II.  Duty of Fair Representation Claims

A union certified under the NLRA owes to its members a duty of fair representation.

*Kazolias v. IBEW LU 363*, No. 09-cv-7222 (RO) (LMS), 2012 WL 6641533, at *9 (S.D.N.Y.

Dec. 11, 2012) *report and recommendation adopted in part*, No. 09-cv-7222 RO, 2013 WL

3682926 (S.D.N.Y. July 1, 2013) (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).  "A union

breaches its duty of fair representation if its actions 'can fairly be characterized as so far outside

a wide range of reasonableness . . . that [they are] wholly arbitrary, discriminatory, or in bad

faith.'"  *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (quoting *Airline*

12

*Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (quotations omitted)).  Arbitrary conduct

outside the wide range of reasonableness is that which is "wholly 'irrational . . . .'"  *O'Neill*, 499

U.S. at 78 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).  "The

'discriminatory' category . . . refers to 'invidious' discrimination, *i.e.*, conduct that is 'based

upon impermissible or immutable classifications such as race or other constitutionally protected

categories, or arises from prejudice or animus.'"  *Stephens v. 1199 SEIU, AFL-CIO*, 45 F. Supp.

3d 284, 293–94 (E.D.N.Y. 2014) (quoting *O'Neill*, 499 U.S. at 81).  "A union acts in bad faith

when it acts with an improper intent, purpose, or motive." *Spellacy*, 156 F.3d at 126 (citing

*Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 531 (10th Cir. 1992)).  "Bad faith encompasses

fraud, dishonesty, and other intentionally misleading conduct."  *Spellacy*, 156 F.3d at 126

(citations omitted).  Review of union activity for an alleged DFR breach "'must be highly

deferential, recognizing the wide latitude that negotiators need for the effective performance of

their bargaining responsibilities.'"  *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1106

(2d Cir. 1991) (quoting *O'Neill*, 499 U.S. at 66).

### A.  Termination DFR Claim

The Complaint alleges that the Union breached its duty of fair representation to Plaintiff

in declining to grieve Plaintiff's termination.  (Compl. ¶¶ 29–32.)  "An employee may seek

judicial relief to redress a claim that a labor union breached its duty of fair representation by

failing to file a grievance 'if . . . the union has sole power under the contract to invoke the higher

stages of the grievance procedure, and if . . . the employee-plaintiff has been prevented from

exhausting his contractual remedies by the union's wrongful refusal to process the grievance.'"

*Clergeau v. Local 1181, Amalgamated Transit Union, AFL-CIO*, No. 06-cv-05567 (DLI)(CLP),

2008 WL 3334035, at *3 (E.D.N.Y. Aug. 10, 2008) *aff'd*, 340 F. App'x 685 (2d Cir. 2009)

(quoting *Vaca*, 386 U.S. at 185).   "In determining whether a breach has occurred, courts typically look to determine whether the union's refusal to process the grievance was arbitrary." *Clergeau*, 2008 WL 3334035, at *3 (citing *Clarke v. Commc'ns Workers of America,* 318 F.Supp.2d 48, 56 (E.D.N.Y.2004) (collecting cases)).

"When a union ignores or perfunctorily presses a meritorious claim, it is held to have acted arbitrarily." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 16–17 (2d Cir. 1993) (citing *Young v. United States Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990); *Vaca*, 386 U.S. at 191; *Lopez v. McLean Trucking Co.*, 798 F.2d 611, 613-14 (2d Cir. 1986)).   On the other hand, a union is not considered to have acted arbitrarily "where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994). "Accordingly, to prevail on a fair representation claim in such circumstances, a plaintiff must demonstrate that (1) his grievance had merit, (2) that the Union was aware of the grievance, and (3) that the Union's conduct in failing to process the grievance was arbitrary." *Clergeau*, 2008 WL 3334035, at *3.

The Union relies exclusively upon a single exhibit in support of its argument that it did not act in an arbitrary manner in deciding not to grieve Plaintiff's termination.  (Union Mot. at 7–8.)  The Court previously determined that it cannot take judicial notice of Union Exhibit J, as it would require the Court to weight evidence that the Union contends disproves Plaintiff's allegations.  "When the parties ask the Court to weigh evidence outside of the pleadings and thereby test the merits of the evidence, not the complaint, such action is 'more appropriately reserved for the summary judgment procedure, governed by Rule 56, where both parties "may conduct appropriate discovery and submit the additional supporting material contemplated by"

14

that rule.'" *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 164–

65 (S.D.N.Y. 2006) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150,

155 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002))).

As the Union proffers no further arguments as to why dismissal is appropriate, Plaintiff's

Termination DFR Claim survives.

### B.  Manner of Arbitration DFR Claim

The Court next turns to Plaintiff's claim that the "manner" in which the Union handled

arbitration of Plaintiff's involuntary transfer and suspension grievances constitutes a breach of

the duty of fair representation. (Compl. ¶ 35.)  It is not entirely clear to the Court what Plaintiff is

referring to by referencing the "manner" in which arbitration was handled.  To the extent the

Complaint describes the manner of handling arbitration, it appears that Plaintiff's primary

argument is that the Union colluded with LSHV in unduly delaying arbitration, which Plaintiff

has already asserted as a separate grounds for breach of the duty of fair representation.  (*See*

Compl. ¶¶ 12, 15, 17, 18, 21, 23–28.)  Therefore, the Court will address the Manner of

Arbitration DFR Claim and the Arbitration Delay DFR Claim together.

### C.  Arbitration Delay DFR Claim

As stated above, the Complaint asserts that the Union breached its duty of fair

representation by colluding with LSHV to improperly delay the arbitration of Plaintiff's

involuntary transfer and suspension grievances.  (Compl. ¶ 37.)  The Second Circuit "has

recognized that a union may breach its duty when it fails to process a meritorious grievance in a

timely fashion with the consequence that arbitration on the merits is precluded." *Young v. U.S.*

*Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990) (collecting cases).  However, "courts typically

require evidence of prejudice, non-compliance with time limits set forth in a CBA, egregious

departure from standard union practice, or other evidence of bad faith before basing a DFR violation on too-slow grievance of a claim." *Bejjani v. Manhattan Sheraton Corp.*, No. 12-cv-6618 (JPO), 2013 WL 3237845, at \*11 (S.D.N.Y. June 27, 2013) *aff'd*, 567 F. App'x 60 (2d Cir. 2014) ("*Bejjani*").

The Complaint contains no allegations that the Union's delay in arbitrating Plaintiff's involuntary transfer and suspension grievances violated any of the time limits set forth in the CBA, nor are there allegations that the Union greatly deviated from its standard practice in its approach to arbitrating Plaintiff's grievances.  Additionally, the Complaint does not assert that Plaintiff suffered any prejudice from the Union's alleged delay.  However, it appears that Plaintiff's "too-slow grievance of a claim" theory of a DFR breach is arguably premised upon the contention that the Union acted in bad faith.

In *Bejjani*, plaintiffs' claim that the union acted in bad faith, thereby breaching its duty of fair representation, was premised upon allegations that the union was engaged in a conspiracy with plaintiffs' employer.  2013 WL 3237845, at \*14.  Similarly, here, Plaintiff contends that the Union and LSHV colluded to delay arbitration of Plaintiff's involuntary transfer and suspension grievances.  The *Bejjani* court dismissed plaintiff's DFR claim, holding that "the bare and conclusory allegation that the Union manifested bad faith by conspiring with the [employer] does not rise above *Twombly'*s plausibility threshold.  *Twombly* requires more than a charge that something bad happened and a conclusory allegation that this bad thing was also illegal because it resulted from a malevolent conspiracy."  *Id*. at \*15.  In the present case, the Complaint is replete with conclusory allegations that the Union and LSHV colluded with one another to delay arbitration.  (Compl. ¶¶ 12, 15, 17, 18, 21, 23–28.)  However, the Complaint makes no effort to allege an explanation as to "why [the Union and LSHV] would have (or how they did) act in

unison to harm [Plaintiff], or how this agreement operated on the ground."  2013 WL 3237845, at *15.  Therefore, because the Complaint fails to allege "plausibly the existence of a conspiracy that infused [the Union's] otherwise-lawful actions with bad faith," the Court dismisses Plaintiff's Manner of Arbitration DFR Claim and Arbitration Delay DFR Claim.  *Id*. at *16.

## III.     **Breach of the CBA Claim**

Paragraph 39 of the Complaint asserts that LSHV breached the CBA in terminating Plaintiff's employment.  (Compl. ¶ 39.)  "Although formally comprised of two separate causes of action, a suit in which an employee alleges that an employer has breached a CBA and that a union has breached its duty of fair representation by failing to enforce the CBA is known as a 'hybrid § 301/fair representation claim.'"  *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983); *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33–34 (2d Cir. 2000)). "Because a union's breach of the duty of fair representation is a prerequisite to consideration of the merits of plaintiff's claim against an employer for breach of a CBA, courts presented with hybrid claims need not reach the question of whether the employer violated the CBA unless the union has acted arbitrarily, in bad faith, or discriminatorily."  *Bejjani*, 2013 WL 3237845, at *8. As the Court has determined that Plaintiff's Termination DFR Claim survives the motion to dismiss stage of litigation, and because LSHV does not appear to move on Plaintiff's breach of the CBA claim, the CBA breach claim remains viable.

## IV.     **CPLR and NYCRR Sanction Claims**

The Complaint alleges that LSHV "violated § 8303 of Civil Practice Law and Rules, Rule 22 NYCRR 130-1.1 and New York Rules of Professional Conduct when [it], upon information and belief, aided and abetted [the Union] to delay" arbitration of Plaintiff's

grievances.  (Compl. ¶ 40.)  LSHV asserts that this claim should be dismissed because neither

the CPLR nor the NYCRR provide for an independent cause of action for the imposition of

sanctions.  (Defendant Legal Services of the Hudson Valley's Memorandum of Law in Support

of Its Fed. R. Civ. Pro. 12(B) Motion to Dismiss ("LSHV Mot." or ECF No. 17) at 8–9.)  In his

opposition brief, Plaintiff contends that LSHV "misconstrued the Complaint when [LSHV] read

it to mean that Plaintiff is seeking sanctions against LSHV."  (Plaintiff's Opposition to

Defendants' Motions to Dismiss ("Pl.'s Opp." or ECF No. 22) at 22, n. 7.)  Consequently, to the

extent Plaintiff ever sought to assert a claim for sanctions pursuant to the CPLR and the NYCRR

(which appears to be the case on the face of the Complaint), Plaintiff apparently has abandoned

that claim.  In any event, "[s]ince New York does not recognize an independent cause of action

for the imposition of sanctions under either CPLR 8303-a or Rules of the Chief Administrator of

the Courts (22 NYCRR) § 130-1.1," the Court dismisses this claim.  *Cerciello v. Admiral Ins.*

*Brokerage Corp.*, 90 A.D.3d 967, 968 (2d Dep't 2011) (collecting cases).

## V.      Fraud Claims

The Defendants advance a series of arguments as to why dismissal of Plaintiff's fraud

claim is appropriate.  The Union asserts that Plaintiff's common law fraud claim is preempted by

the LMRA.  (Memorandum of Law in Support of Defendant Staff Attorneys

Association/National Organization of Legal Service Workers' Motion to Dismiss ("Union Mot.")

at 14.)  LSHV argues that dismissal of Plaintiff's fraud claim is warranted because the Complaint

fails to meet the heightened pleading standard.  (LSHV Mot. at 9.)[10]

---

[10] LSHV additionally argues that Plaintiff should not be permitted to amend the Complaint "because there is no cognizable fraud claim based on the facts asserted in the Complaint or in Plaintiff's January 16, 2015 letter to this Court."  (LSHV Mot. at 9.)  The Court need not reach this issue, however, as Plaintiff had not provided any indication that he would like to amend the Complaint.  First, Plaintiff's opposition brief makes no request to amend the Complaint.  Second, while Plaintiff's letters of August 30, 2015 (ECF No. 31) and December 21, 2015 (ECF No. 34) request that this Court consider additional documents in deciding Defendants' motions to dismiss, nowhere does Plaintiff request permission to amend the Complaint.

### A.  LMRA Preemption

In *Textile Workers Union of America v. Lincoln Mills of Alabama*, the Supreme Court

held that, in certain instances, state law claims may be preempted by Section 301 of the

LMRA.[11]  353 U.S. 448, 456–57 (1957).  "The principles for deciding when a state-law claim is

preempted by the LMRA are more easily expressed than applied."  *Foy v. Pratt & Whitney Grp.*,

127 F.3d 229, 233 (2d Cir. 1997).  "In determining whether Section 301 of the LMRA

preemption applies to a claim, courts first examine the elements of the state-law claims at issue."

*Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 583 (E.D.N.Y. 2011) (citing *Foy*,

127 F.3d at 233).  "Second, courts determine whether adjudication of any element of the state

law claim necessitates interpretation of the contract."  *Semper*, 786 F. Supp. 2d at 583 (citing

*Zuckerman v. Volume Servs. Am., Inc.*, 304 F. Supp. 2d 365, 370 (E.D.N.Y. 2004) (citing *Foy*,

127 F.3d at 233)).  "'[W]here the resolution of a state-law claim depends on an *interpretation* of

the collective-bargaining agreement, the claim is pre-empted.'"  *Id.* (quoting *Hawaiian Airlines,

Inc. v. Norris*, 512 U.S. 246, 260–62 (1994) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486

U.S. 399, 405–06 (1988)) (emphasis added)) (citing *Hernandez v. Conriv Realty Assocs.*, 116

F.3d 35, 38 (2d Cir. 1997)).  "However, 'the bare fact that a collective-bargaining agreement will

be consulted in the course of state-law litigation plainly does not require the claim to be

extinguished.'"  *Foy*, 127 F.3d at 233 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)

(citing *Lingle*, 486 U.S. at 413, n. 12).  "The boundary between claims requiring 'interpretation'

---

[11] Section 301 of the LMRA provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing
> employees in an industry affecting commerce . . . may be brought in any district court of
> the United States having jurisdiction of the parties without respect to the amount in
> controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.

of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001).

"To state a common law fraud claim in New York, a plaintiff must allege that (1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 332 (S.D.N.Y. 2009) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).

Here, the alleged fraud involves misrepresentations by the Union to Plaintiff regarding the Union's handling of Plaintiff's grievances. (*See* Compl. ¶¶ 10–27.)  In particular, Plaintiff alleges that the Union represented to him that it was pursuing the involuntary transfer and suspension grievances through arbitration with LSHV. (*Id.* ¶ 10.)  Plaintiff later learned—after being informed by the Union that it was pursuing his grievances—that the Union had yet to request documents from LSHV or schedule a preliminary conference with the arbitrator. (*Id.* ¶ 23.)  Plaintiff further contends that the Union colluded with LSHV to delay arbitration of the Transfer Grievance and the Suspension Grievance. (*Id.* ¶ 21.)

While the Union's responsibility to pursue Plaintiff's grievances through arbitration is indeed governed by the CBA, Plaintiff's fraud claim does not call for the Court's interpretation of the CBA.  The meaning of the CBA is not at issue—clearly Article XIX of the CBA requires the Union to pursue Plaintiff's grievances; rather, the fraud claim concerns allegedly false representations made by the Union regarding their compliance with CBA-governed duties to arbitrate Plaintiff's grievances. *See Wynn*, 273 F.3d at 158 (noting that "the parties did not contest the meaning of the CBA; rather, the dispute about whether management had made false

representations is 'fact-bound, and will primarily concern what was or was not stated at the summer 1992 meeting'") (quoting *Foy*, 127 F.3d at 234). Plaintiff's claim is "not a disguised claim for breach of the CBA." *Id*. at 159. Instead, his claim is that the Union misrepresented its compliance with an obligation imposed by the CBA. Such a claim does not require the Court to interpret the CBA. *See Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 40 (2d Cir. 1997) (holding that to resolve plaintiff's fraud claim, "a court either will never refer to a collective bargaining agreement, or will refer to the collectively bargaining agreement only to determine [plaintiff's] damages, if appropriate) (internal citations omitted). Like the claims in *Foy* and *Wynn*, Plaintiff's fraud claim "requires [only] consulting the CBA," not interpreting it. *Wynn*, 273 F.3d at 158–59 ("Reference to the CBA may be needed, but state law will play no part in determining what the parties agreed to in the CBA or whether the CBA has been breached. State law—not the CBA—is the source of the rights asserted by plaintiffs: the right to be free of economic harm caused by misrepresentation.").

The Union contends that Plaintiff's fraud claim is "inextricably intertwined" with the CBA, and therefore preempted by Section 301 of the LMRA, because "the alleged 'fraud' arises out of the Union and [LSHV]'s dealings with [Plaintiff] with regard to the grievance process under the CBA." (Union Mot. at 15) (citing *Lingle*, 486 U.S. at 402.) This argument oversimplifies and impermissibly seeks to extend the reach of the LMRA § 301 preemption analysis. A claim is "inextricably intertwined" with a collective bargaining agreement when its "resolution is substantially dependent on an analysis of the terms of the CBA." *Morrissey v. Verizon Commc'ns, Inc.*, No. 10-cv-6115 (PGG), 2011 WL 2671742, at *4 (S.D.N.Y. July 7, 2011). In *Livadas*, the Supreme Court noted that:

> the pre-emption rule has been applied only to assure that the
> purposes animating § 301 will be frustrated neither by state laws

> purporting to determine questions relating to what the parties to a
> labor agreement agreed, and what legal consequences were intended
> to flow from breaches of that agreement, nor by parties' efforts to
> renege on their arbitration promises by "relabeling" as tort suits
> actions simply alleging breaches of duties assumed in collective-
> bargaining agreements.

512 U.S. at 122–23 (internal citations and quotations omitted).  Resolution of Plaintiff's fraud

claim is not "substantially dependent" upon an interpretation of the language in the CBA.

Moreover, the purposes of Section 301 will not be frustrated by permitting Plaintiff to go

forward with his fraud claim, as the Court will not be required to delve into an analysis of the

parties' intent in drafting the CBA nor examine a purported breach of the CBA.  Therefore,

Plaintiff's fraud claim against the Union is not preempted by LMRA § 301, and the Court

accordingly declines to dismiss that claim.

### B.  Rule 9(b) Pleading Standard

The Court next turns to LSHV's challenge that Plaintiff failed to plead his fraud claim

with particularity, as is required by Rule 9(b) of the Federal Rules of Civil Procedure.  *See* Fed.

R. Civ. P. 9(b).  Particularity means that the factual allegations reflect the "who, what, when,

where and how of the alleged fraud." *Bauman v. Mount Sinai Hosp.*, 452 F. Supp. 2d 490, 503

(S.D.N.Y. 2006) (internal citation and quotation marks omitted).

With respect to LSHV's conduct, the Complaint alleges that LSHV colluded with the

Union to delay arbitration of Plaintiff's grievances (the "Collusion Theory").  (Compl. ¶ 21.)

The Complaint later states, in conclusory fashion, that LSHV committed fraud upon Plaintiff.

(*Id*. ¶ 42.)  Plaintiff outlines another theory for his fraud claim in his January 16, 2015 letter to

the Court.  (Affirmation of Tarek M. Maheran, Esq. in Support of Defendants' Motion to

Dismiss ("Maheran Aff."), Exhibit B at 3, n.2.)  Plaintiff argues that LSHV committed "fraud

upon Plaintiff and New York State Division of Human Rights when [it] misrepresented by [its]

actions and omissions that the Union was not pursuing the grievances" (the "Fraud upon the Court Theory"). (*Id.*) Under either theory, Plaintiff's fraud claim against LSHV, as currently pled, fails to meet the heightened pleading standard.

Plaintiff's Collusion Theory fraud claim is deficient in multiple respects, including, but not limited to, the following: (1) it fails to identify a material false representation that LSHV made to Plaintiff; (2) it does not specify when such a representation was made; and (3) it does not articulate any fraudulent intent on the part of LSHV. Additionally, the Fraud upon the Court Theory of Plaintiff's fraud claim finds no support in the facts as currently pled in the Complaint. Conclusory labels of fraud or deception—as opposed to factual allegations concerning particular intentional misrepresentations, made at particular times, by particular people, through particular methods—are legally insufficient. *Shields v. CityTrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (Rule 9(b) is no "license to base claims of fraud on speculation and conclusory allegations."); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971) (noting that conclusory allegations of fraud will be dismissed under Rule 9(b)).

Plaintiff makes next to no effort to address LSHV's argument that the Complaint does not plead fraud with particularity, other than to assert that it is "without merit[]." (Pl.'s Opp. at 23.) The Court interprets this as essentially an abandonment of Plaintiff's fraud claim against LSHV. Particularly as to fraud claims, which are required to be pled with particularity, the Court would expect a brief opposing a motion to dismiss to contain *particulars* regarding the alleged fraud. Accordingly, the Court dismisses the fraud claim against LSHV.

## VI.   Breach of Implied Covenant of Good Faith

The Complaint alleges that Defendants "breached the implied covenant of good faith of the CBA when they aided and abetted with each other to delay" arbitration of Plaintiff's

grievances.  (Compl. ¶ 43.)  The Defendants assert that Plaintiff's claim for breach of implied covenant of good faith must be dismissed because it is preempted by Section 301 of the LMRA. (LSHV Mot. at 11; Union Mot. at 14.)

"In New York, 'an implied covenant only arises with respect to contractual relationships.'"  *Semper*, 786 F. Supp. 2d at 584 (quoting *Allocco v. Dow Jones & Co., Inc.*, No. 02-cv-1029 (LMM), 2002 WL 1402084, at \*6 (S.D.N.Y. June 27, 2002) (internal citations omitted) (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 91 (1983))).  "New York law 'implies a covenant of good faith and fair dealing, pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Semper*, 786 F. Supp. 2d at 584 (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (internal quotation marks and citation omitted)).  "Accordingly, there can be no covenant of good faith implied unless there is a contract between two parties upon which to imply it."  *Semper*, 786 F. Supp. 2d at 584 (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (holding that "[the implied covenant] can only impose an obligation consistent with other mutually agreed upon terms in the contract.") (internal quotations omitted)).

In the present action, the CBA is the only contract between the parties.  Where, as here, "[t]he only contract that exists between plaintiff and defendants is the CBA and any implied obligation that may exist would be in aid of that agreement and would require interpretation of that agreement . . . plaintiff's claim for breach of the implied covenant of good faith and fair dealing is pre-empted."  *Allocco*, 2002 WL 1402084, at \*6.  *See also Semper*, 786 F. Supp. 2d at 584 ("The resolution of [the breach of implied covenant of good faith] claim is 'substantially dependent upon analysis of the terms of' the CBA and therefore is preempted by federal law.")

24

(quoting *Allis–Chalmers Corp.*, 471 U.S. at 220). Therefore, the Court dismisses Plaintiff's claim for breach of the implied covenant of good faith.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part. The Court dismisses the Manner of Arbitration DFR Claim, as against the Union; the Arbitration Delay DFR Claim, as against the Union; the CPLR and NYCRR sanction claims, as against LSHV; the fraud claim, as against LSHV; and the breach of the implied covenant of good faith claim, as against all Defendants. The remaining claims are as follows: the Termination DFR Claim, as against the Union; breach of the CBA, as against LSHV; and fraud, as against the Union. Defendants are directed to file answers within 30 days hereof. The parties are directed to appear for an initial pre-trial conference on May 13, 2016 at 10:15 a.m. Parties shall bring a completed case management plan to the initial pre-trial conference. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 15 and 24.

Dated:   March 23, 2016
         White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge