USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/30/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JASBRINDER SAHNI,

                Plaintiff,

-against-

STAFF ATTORNEYS ASSOCIATION, and
NATIONAL ORGANIZATION OF LEGAL
SERVICES WORKERS

                Defendants.

No. 14-cv-9873 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Jasbrinder Sahni, a former employee of Defendant Legal Services of the Hudson Valley ("LSHV"), initiated the instant action against LSHV, the Staff Attorneys Association ("SAA"), and the National Organization of Legal Services Workers ("NOLSW")[1] on December 15, 2014. (Compl., ECF No. 1). This Court dismissed a portion of Plaintiff's claims in an opinion issued on March 23, 2016. *Sahni v. Staff Attorneys Ass'n*, No. 14-CV-9873 (NSR), 2016 WL 1241524, at *1 (S.D.N.Y. Mar. 23, 2016) (*"Sahni I"*). Following a motion for reconsideration filed by Defendants, this Court dismissed all of Plaintiff's remaining claims on May 13, 2016. *Sahni v. Staff Attorneys Ass'n*, No. 14-CV-9873 (NSR), 2016 WL 3766214, at *1 (S.D.N.Y. May 13, 2016).

Currently before the Court is Plaintiff's post-judgment motion to amend his complaint. (Pl.'s Mot. Am. Compl., ECF No. 65.) The Court notes that pursuant to the stipulation submitted

---

[1] Although the Complaint names the SAA and NOLSW as distinct Defendants SAA and NOLSW have indicated that they are not distinct legal entities—SAA is the name of NOLSW's bargaining unit at LSHV. (Def.'s Mem. of Law in Supp. of Mot. To Dismiss at 1, n.1, ECF No. 26.) For ease of reference, the Court will refer to SAS and NOLSW collectively as the "Union."

by Plaintiff and LSHV on April 11, 2017, all claims against LSHV have been dismissed from this action, with prejudice. (ECF No. 72.) Accordingly, the Court considers the instant motion only as it relates to Plaintiff's claims against the Union.[2]

**FACTS**

The Court assumes the parties' familiarity with the underlying facts and prior proceedings in this case, as outlined in this Court's previous opinions. To briefly summarize, Plaintiff is a former employee of LSHV and member of the Union. *Sahni I*, 2016 WL 1241524, at *2. During the course of his employment with LSHV—in December of 2011—Plaintiff was involuntarily transferred from the organization's White Plains office to the Mount Vernon office. *Id.* The Union grieved Plaintiff's involuntary transfer on his behalf, but the grievance was ultimately denied. *Id.* The Union subsequently sought arbitration of Plaintiff's involuntary transfer grievance *Id.*

On April 7, 2012, Plaintiff was suspended from his employment without pay. *Id.* The Union again filed a grievance on Plaintiff's behalf, but the grievance was denied. *Id.* Thereafter, the Union sought arbitration of Plaintiff's suspension grievance. *Id.*

---

[2] Given the interrelation between Plaintiff's claims against LSHV for violations of the collective bargaining agreement and against the Union for breach of the duty of fair representation, however, this Court's analysis will necessarily touch on claims leveled against the dismissed Defendant. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (describing suits against employers for breach of a collective bargaining unit and suits for breach of a union's duty of fair representation as "inextricably interdependent"); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) ("[T]he two constituent claims in every hybrid 301 action—breach of collective bargaining agreement and breach of a union's duty of fair representation—are interdependent; if the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of the duty of fair representation claim against the union must necessarily fail with it.").

Plaintiff alleges that between June 2012 and February 2013, the Union repeatedly represented that it was actively pursuing arbitration of both the involuntary transfer and suspension grievances. *Id.* However, despite numerous requests from Plaintiff, the Union failed to provide him with the notice of arbitration until February 2013. *Id.*

On September 24, 2014, while the arbitration of Plaintiff's transfer and suspension claims was pending, LSHV terminated Plaintiff's employment. *Id.* Plaintiff once more requested that the Union grieve his claim. The Union denied Plaintiff's request and, without providing any justification for its decision, elected to not grieve Plaintiff's termination. *Id.* Plaintiff further claims that the Union failed to inform him of its decision to not grieve his termination until after the allotted 45-day period to file a grievance had lapsed. *Id.*

Plaintiff initiated the instant action on December 15, 2014, alleging, *inter alia*, that the Union breached its duty of fair representation by improperly pursuing his involuntary transfer and suspension grievances and by failing to grieve his termination. (Compl., ECF No. 1.) In addition, Plaintiff asserted claims against his former employer, LSHV, for common law fraud, frivolous conduct, breach of contract, and breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 41–43.)

Both Defendants filed motions to dismiss Plaintiff's claims on April 22, 2015. (ECF No. 15). In an initial opinion issued on March 23, 2016, this Court dismissed many—but not all—of Plaintiff's claims. (ECF No. 35.) Following a motion for reconsideration filed by LSHV and the Union, this Court dismissed *all* remaining claims against both Defendants on May 13, 2016. (ECF No. 54.)

While Defendants' motions to dismiss were pending before this Court, Plaintiff's transfer and suspension grievances were arbitrated. (Pl.'s Mot. for Leave to Am. Compl. ("Pl,'s Mot.")).

Ex. A, Proposed Amended Complaint ("PAC") ¶ 62, ECF No. 65.) On March 31, 2016—roughly one week after this Court issued its initial opinion—the arbitrator issued a decision denying both of Plaintiff's grievances. (Def.'s Opp. to Pl.'s Mot. for Leave to Am. Compl. ("Def.'s Opp."), Ex. C., ECF No. 67.)

Following the unfavorable arbitration decision, Plaintiff sought leave from this Court to file a motion to amend his complaint and incorporate factual allegations and claims relating to the arbitration process. (ECF No. 48.) This Court granted Plaintiff's request, and Plaintiff filed the instant Rule 15 motion to amend on September 06, 2016. (ECF No. 65.)

After Plaintiff's Rule 15 moving papers had been served on opposing counsel but before his reply was due, Plaintiff sought leave to file a Rule 60(b) motion for relief from this Court's May 13th judgment. (Pl.'s August 22, 2016 Letter, ECF No. 57.) Specifically, Plaintiff alleged that he had recently received "new evidence" that the Court had not previously considered. (*Id.*) Alternatively, Plaintiff asked the Court to consider this "new evidence" in the pending Rule 15 motion. (*Id.* at 4.)

On August 24, 2016, this Court issued an order denying Plaintiff's request for leave to file a Rule 60(b) motion, finding that "the more efficient course [would] be to allow Plaintiff to add these facts to the proposed amended complaint, which in turn [would] allow the Court to consider them in conjunction with [the pending Rule 15 motion]." (Mem. & Order, August 26, 2016 at 2, ECF No. 60.) Additionally, because Plaintiff would be introducing new evidence in his reply brief, this Court provided Defendants the opportunity to file a sur-reply addressing why the "newly discovered evidence is inappropriate for consideration." (*Id.*)

After the instant motion was fully submitted, LSHV and Plaintiff filed a stipulation, dismissing all claims against LSHV from this action, with prejudice. (Stip. of Partial Dismissal,

ECF No. 72.) Accordingly, the Court now addresses Plaintiff's proposed amendments to his Complaint as they relate to the only remaining Defendant—the Union.

## DISCUSSION

### I. Applicable Law

Plaintiff currently seeks leave to amend his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, citing both relevant developments since the original complaint was filed and newly discovered evidence. Plaintiff's motion, however, was filed after this Court had already dismissed the entirety of his claims and, by extension, this action. As the Second Circuit has recognized:

> In the ordinary course, the Federal Rules of Civil Procedure provide that courts should freely give leave to amend a complaint when justice so requires. This permissive standard is consistent with our strong preference for resolving disputes on the merits. Where, however, a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered by considerations of finality. As a procedural matter, a party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside . . . pursuant to [Rules] 59(e) or 60(b).

*Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation marks and citations omitted); *see also Nat'l Petrochem. Co. of Iran v. M/T Stolt Sheaf,* 930 F.2d 240, 245 (2d Cir.1991) ("Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint.").

Where, as here, a plaintiff moves to amend the complaint after an action has been dismissed without first seeking relief from the judgment, courts may construe the Rule 15 motion as a motion under Rule 60(b). *See, e.g.*, *Prince of Peace Enterprises, Inc. v. Top Quality Food Mkt., LLC*, No. 07-CV-0349 (LAP), 2012 WL 4471267, at *4 (S.D.N.Y. Sept. 21, 2012) ("The Court construes Plaintiff's request to reopen the case and for leave to amend the complaint against [defendant] in essence, a request to vacate the Court's [] final judgment of dismissal, as a

5

Rule 60(b) motion."); *see also In re Lawrence*, 293 F.3d 615, 622–23 (2d Cir. 2002) (describing a "district court's decision on whether or not to recharacterize a claim as a Rule 60(b) motion" as an exercise of that court's discretion); *Ahmed v. Dragovich*, 297 F.3d 201, 208–209 (3d Cir. 2002) ("One of the principal commentators on federal procedure has noted that '[m]otions seeking to amend a complaint that are made after a judgment of dismissal have been entered have been construed as Rule 60(b) motion.'" (quoting James W. Moore, *Moore's Federal Practice* § 60.64, at 60–196 (3d ed. 2002))).

Unlike the liberal standard under Rule 15, Rule 60(b) standards are more stringent and place "significant emphasis on the value of finality and repose." *Williams*, 659 F.3d at 213 (internal quotation marks omitted). However, "considerations of finality do not always foreclose the possibility of amendment, even when leave to replead is not sought until after the entry of judgment." *Id.* Rather, "postjudgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15." *Id.* Thus, in such circumstances, courts may consider "the nature of the proposed amendment in deciding whether to vacate the previously entered judgment," *Id.* Where, however, the amended proposed amended complaint will not address the deficiencies of the original pleading, the motion to reopen the case should be denied. *See Ahmed*, 297 F.3d at 209 ("[T]he fact that the amended pleading offered by the movant will not cure the defects in the original pleading that resulted in the judgment of dismissal may be a valid reason both for denying a motion to amend under Rule 15(a) and for refusing to reopen the judgment under Rule 60(b)" (internal quotation marks omitted)).

Given the posture of this action, the Court construes Plaintiff's instant motion to amend his complaint as a motion for relief from this Court's previous judgment pursuant to Federal

Rule of Civil Procedure 60(b), subsections (1) and (2).[3] Under Rule 60(b)(1), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). While Rule 60(b)(1) traditionally only permitted a party to seek relief for his own mistake, "the 1946 amendments changed [the] language to make clear that relief from judgment was available for any mistake, including the mistake of the Court." *In re 310 Assocs.*, 346 F.3d 31, 34–35 (2d Cir. 2003).

Rule 60(b)(2), on the other hand, "provides relief when the movant presents newly discovered evidence that could not have been discovered earlier and that is relevant to the merits of the litigation." *Victorinox AG v. B&F Sys., Inc.*, No. 15-CV-4032, 2017 WL 4149288, at *5 (2d Cir. Sept. 19, 2017) (summary order) (internal quotation marks omitted). In order to prevail on a Rule 60(b)(2) motion, the movant must demonstrate that:

> (1) the newly discovered evidence was of facts that existed at the time of the trial or other dispositive proceeding, (2) the movant [was] justifiably ignorant of them despite due diligence, (3) the evidence [was] admissible and of such importance that it probably would have changed the outcome, and (4) the evidence [is] not merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (internal quotation marks omitted).

Finally, this Court notes that "[t]he Second Circuit has repeatedly recognized that relief under Rule 60(b) is extraordinary; it is generally not favored and is appropriate only where

---

[3] The only other remotely applicable subsection is Rule 60's catchall provision, subdivision (b)(6). Rule 60(b)(6) allows a court to relieve a party from a judgment for "any other reason that justifies relief." However, "Rule 60(b)(6) applies only when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (internal quotation marks omitted); *see also* State *St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004) ("Where a claim sounds very much like a claim regarding newly discovered evidence, the claim is controlled by 60(b)(2) and should not be labeled as if brought under a different provision of Rule 60(b)." (internal quotation marks omitted)).

exceptional circumstances exist." *GMA Accessories*, *Inc. v. BOP LLC*, No. 07-CV-3219 (LTS) (DCF), 2007 WL 4563433, at *2 (S.D.N.Y. Dec. 20, 2007) (citing *Central Vermont Public Service Corp. v. Herbert*, 341 F.3d 186 (2d Cir. 2003).

## II. Analysis

Plaintiff presently requests relief from this Court's May 13, 2016 ruling dismissing all of his claims and additionally seeks leave to amend his Complaint. (Pl.'s Reply Mem. of Law in Supp. of Mot. to Amend Compl. ("Pl.'s Reply") at 3, ECF No. 66.) Though inartfully articulated in his moving papers, Plaintiff's arguments may be condensed to two primary propositions: (1) Plaintiff claims he is entitled to relief pursuant to Rule 60(b)(1) because this Court "mistakenly" applied the arbitration procedures of an expired collective bargaining agreement ("CBA") to his claims; and (2) even if the arbitration procedure is applicable to his claims, Plaintiff is entitled to relief pursuant to Rule 60(b)(2) because of "newly discovered evidence" establishing that his former employer repudiated that arbitration process. The Court now considers each of Plaintiff's arguments in turn.

### A. *Rule 60(b)(1) Relief*

Plaintiff first contends that relief from the judgment is proper because the Court mistakenly applied the arbitration requirements of the 2013 CBA to his termination grievance. (*Id.*) Specifically, Plaintiff argues that his termination grievance was not subject to an arbitration procedure because the controlling CBA had expired on December 31, 2013—almost nine months before Plaintiff was terminated. (*Id.* at 4.) Additionally, Plaintiff argues that even if the 2013 CBA were in effect at the time of his termination, his grievance would be governed by the nondiscrimination clause of the CBA, which does not require a grievant to arbitrate his claims prior to seeking judicial intervention. (*Id.* at 3.)

This Court is unpersuaded by Plaintiff's arguments. Although "Rule 60(b)(1) is available for a district court to correct legal errors, such as when the judge has made a substantive mistake of law or fact," *Rai v. WB Imico Lexington Fee, LLC*, No. 09-CV-9586 (PGG), 2017 WL 4350567, at *2 (S.D.N.Y. June 28, 2017) (internal quotation marks and citations omitted), no such substantive mistake occurred in this action.[4]

Assuming that Plaintiff is correct in noting that the 2013 CBA was expired at the time of his termination, there is nevertheless a CBA that was retroactively operative at that time. The 2014-2016 CBA, which contains a grievance procedure analogous to that of the 2013 CBA, was "effective as of and retroactive to January 1, 2014"—more than nine months before Plaintiff was terminated. (Def.'s Sur Reply in Opp. to Pl.'s Mot. for Leave to Amend Compl. ("Def.'s Sur-Reply") at 3, Ex. C, Collective Bargaining Agreement at 18-19, ECF No. 68.) The Court's exhaustion analysis, therefore, carries equal weight despite the expiry of the 2013 CBA, making any factual mistake in the Court's previous opinions far from substantive.

The Court is equally unpersuaded by Plaintiff's contention that his termination claim is not subject to the CBA's grievance procedure. Article II of both CBAs allow for grievants to "avail themselves of any statutory or administrative machinery provided" for the resolution of

---

[4] As a preliminary matter, the Court notes that none of the claims previously raised by Plaintiff were dismissed for failure to exhaust the CBA's grievance procedure. The Court simply noted in its previous Opinion that "while the Complaint did not explicitly assert a [LMRA] Section 301 claim, such a claim would in any event not survive the motion to dismiss stage" because (1) "Plaintiff failed to exhaust the CBA's grievances," and (2) "Plaintiff is not exempt from exhaustion of the CBA procedures under [any] exception." *Sahni II*, 2016 WL 3766214, at *2. As Plaintiff did not actually raise a LMRA Section 301 claim in his Complaint, however, that exhaustion analysis was not essential for this Court's ruling on Defendants' motion to dismiss. Indeed, Plaintiff's claim for breach of the CBA was dismissed on preemption—*not* exhaustion—grounds. *Id.* ("[T]he Court's determination that that the breach of implied covenant of good faith claim is preempted by the LMRA applies with equal force to Plaintiff's claim for breach of the CBA.").

discrimination claims "in addition to the grievance procedure specified in Article XIX [of the CBA]." (Pl.'s Reply, Ex. 3, Collective Bargaining Agreement at 27.) Article II, thus, allows grievants to seek judicial and administrative remedies for alleged discrimination outside of those provided by the controlling CBA. Indeed, Plaintiff took full advantage of this Article's protections and brought an entirely separate action for discrimination against his former employer, LSHV. *See Sahni v. Legal Services of the Hudson Valley*, No. 14-CV-01616 (S.D.N.Y. filed March 10, 2014). Article II's protections do not, however, entitle Plaintiff to bring claims for a violation of the CBA or for breach of the duty of fair representation without first exhausting the grievance procedure. Such claims arise out of the contractual agreement—the CBA—and require exhaustion of the contractual remedies. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) ("It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement. Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." (internal citations omitted)); *Vaca v. Sipes*, 386 U.S. 171, 184 (1967) (recognizing that when an "employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. . . . [and] the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement").

While there are exceptions to this general rule, none apply to the present action; LSHV did not repudiate the grievance procedure[5] and the Union does not have the sole power to pursue a termination-related grievance under the CBA. *See Vaca*, 386 U.S. at 185 (ruling that an

---

[5] *See infra* Part II, Section B.

individual employee may obtain judicial review of his breach of CBA claim despite his failure to exhaust contractual remedial procedures only where: (1) the employer repudiates those contractual procedures; or (2) the union has "sole power under the contract to invoke the higher stages of the grievance procedure" but wrongly refuses to process the grievance).

This Court's exhaustion analysis from its previous opinions, therefore, constituted neither a mistake nor "exceptional circumstance" that would justify relief under Rule 60(b)(1).

B. *Rule 60(b)(2) Relief*

Plaintiff next argues that he is entitled to relief from the judgment because of "newly discovered evidence" evincing that LSHV repudiated the arbitration process. (Pl.'s Reply at 17.) Specifically, Plaintiff claims he was recently made aware of two relevant memoranda of agreement ("MOAs") executed between LSHV and the Union during their negotiations for a new CBA in 2014. (*Id.* at 15–17.) The first MOA, which was signed on October 30, 2014, updated the CBA's grievance procedure, but omitted language referring to a terminated employee's right to pursue arbitration on his own accord—that is, without Union support. (*Id.*) A subsequent MOA, signed only a few days later on November 14, 2014, re-incorporated the language from the 2013 CBA allowing individual employees to seek arbitration of grievances in their own name. (*Id.*) By Plaintiff's account, LSHV and the Union intentionally fashioned the October MOA to prevent him from independently seeking arbitration of his termination grievance. (*Id.*) The October MOA, Plaintiff argues, thus constituted a repudiation of the arbitration procedure by his former employer, and LSHV should be estopped from enforcing it. (*Id.*)

This Court is unpersuaded by Plaintiff's contentions and finds that Plaintiff is not entitled to relief pursuant to Rule 60(b)(2) for a multitude of reasons. First, the October MOA in which LSHV allegedly repudiated the arbitration procedure is *not* "newly discovered evidence" within

the meaning of the rule. Pursuant to Rule 60(b)(2), " [the] movant must have been justifiably ignorant of the evidence despite due diligence" to be entitled to relief from the judgment. *Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (citing *United States v. IBT*, 179 F.R.D. 444, 447 (S.D.N.Y. 1988)). According to the record before the Court, however, Plaintiff was aware of the October MOA well before this Court dismissed his claims in May of 2016. In fact, more than a full year before this Court issued its ruling, Plaintiff filed a letter with the Court that referred to the October MOA. (ECF No. 32). Plaintiff even included correspondence from the Union that explained the terms of the MOA as an exhibit in his letter. (Pl.'s Aug, 30, 2015 Letter, Ex. 1 at 4.) Where, as here, the movant ostensibly had knowledge of the evidence before judgment was entered, relief under Rule 60(b)(2) is not warranted.

Secondly, even if the MOA constituted "newly discovered evidence," Plaintiff nonetheless fails to meet the standard for relief pursuant to Rule 60(b)(2). Newly discovered evidence justifies relief from a judgment only when the evidence is "of such importance that it probably would have changed the outcome" of the case. *Int'l Bhd. of Teamsters*, 247 F.3d at 392. The two MOA at the base of Plaintiff's motion, however, would not have affected the Court's previous decision to dismiss Plaintiff's claims.

Plaintiff presents the MOA as evidence that LSHV repudiated the grievance procedure and should, therefore, be estopped from asserting Plaintiff's failure to exhaust as a defense. "[I]n light of the strong governmental interest in promoting the enforcement of collective bargaining contracts," however, "the standard for establishing repudiation is very high." *Fraternal Order of Police, Nat. Labor Council, USPS No. 2 v. U.S. Postal Serv.*, 988 F. Supp. 701, 711 (S.D.N.Y. 1997). Thus, mere assertions that an employer has repudiated the CBA are not enough to circumvent the requirement that an employee exhaust the grievance or arbitration remedies

provided in the agreement. *Id.* Rather, a grievant must allege that an employer actually "refused to go forward with the grievance process." *Allocco v. Dow Jones & Co.*, No. 02-CV-1029 (LMM), 2002 WL 1402084, at *4 (S.D.N.Y. June 27, 2002) (rejecting a claim of "anticipatory repudiation").

Here, no part of LSHV's behavior suggests that the organization ever refused to go forward with the CBA's arbitration procedures. Indeed, Plaintiff concedes that LSHV participated in the arbitration of at least two of his grievances. (*See generally* Pl.'s Mot., Ex. A, PAC.) Where an employer actively participates in the arbitration of a grievant's claims, that employer cannot be said to have repudiated the CBA's grievance procedure.

Moreover, Plaintiff cannot claim that he was deterred from pursuing arbitration on his own behalf by the October MOA. Plaintiff, by his own admission, was unaware of the October MOA's specific provisions during the short period it was in effect. (Pl.'s Reply, Ex. 2, Aff. of Jasbringer Sahni ¶¶ 17–23.) The subsequent November MOA, which was signed only fourteen days later, reiterated his right to seek arbitration without the Union. Because Plaintiff did not know of the terms of the October MOA during the relevant time period, he could not have been deterred from pursuing his own grievance after he was terminated on September 24, 2014. Without such deterrent effect, the October MOA cannot amount to a repudiation of the arbitration process. *See Tran v. Tran*, No. 91-CV-6818 (RPP), 1998 WL 19996, at *2 (S.D.N.Y. Jan. 21, 1998) (finding that an employer had not repudiated the arbitration process by bribing union officials where plaintiff was unaware of the bribe and thus, could "not [be] deterred from pursuing his grievance by knowledge of the bribery").

Therefore, Plaintiff was required to exhaust the CBA's remedies for his termination grievance before seeking judicial intervention. The "newly discovered" evidence proffered by

13

Plaintiff in no way affects this Court's exhaustion analysis. Accordingly, this Court finds that Plaintiff is not entitled to relief under Rule 60(b)(2).

## C. Federal Rule of Civil Procedure 15

Even if Plaintiff had met the stringent Rule 60(b) standards for relief from this Court's previous judgment, Plaintiff would not be granted leave to amend his Complaint. Under the more liberal standards of Federal Rule of Civil Procedure 15, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, leave to amend may be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-11 (2d Cir. 2001)). A proposed amendment is futile if it "could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002) (internal citation omitted). Thus, a court should deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face." *Riverhead Park Corp. v. Cardinale,* 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

Here, Plaintiff's proposed amendment would be futile as it could not withstand a motion to dismiss. The Proposed Amended Complaint ("PAC") asserts three claims against the Union: (1) breach of the duty of fair representation for failing to pursue his termination grievance ("termination DFR claim"); (2) breach of the duty of fair representation for its allegedly lackluster prosecution of Plaintiff's involuntary transfer and suspension grievances before the

arbitrator ("manner of arbitration DFR claim"); and (3) an unfair labor practice claim relating to the Union's handling of Plaintiff's involuntary transfer and suspension grievances ("ULP claim"). (*See* Pl,'s Mot., Ex. A, PAC at 23-24.)

Plaintiff's first proposed claim against the Union has already been dismissed by this Court. As this Court noted in its May 13, 2016 opinion, where a duty of fair representation claim is leveled against a Union in conjunction with a Section 301 claim against an employer, "if the employer is not liable to the employee, neither is the union". *Sahni II*, 2016 WL 3766214, at *2 (citing *Acosta v. Potter*, 410 F. Supp. 2d 298, 309). Plaintiff's PAC does not cure the deficiencies in his Section 301 claim against LSHV: Plaintiff cannot sue his employer for a violation of the CBA without first exhausting the agreement's grievance procedure. *See supra* Part II, Section B. Because Plaintiff's claim against LSHV fails on exhaustion grounds, the related duty of fair representation claim against the Union also must fail.

Plaintiff's manner of arbitration DFR claim is similarly unavailing. Generally, a union breaches the duty of fair representation where its conduct: (1) is "arbitrary, discriminatory or in bad faith," and (2) "seriously undermine[s] the arbitral process." *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 F. App'x 40, 42 (2d Cir. 2006). Further, "[b]ecause federal policy gives unions wide latitude to act in their representative capacity, a plaintiff's obligation to plead sufficient conduct to state a claim for breach of the [duty of fair representation] imposes an enormous burden." *Dillad v. SEIU Local 32BJ*, No. 15-CV-4132 (CM), 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (internal quotation marks omitted); *see also Guerrero v. Soft Drink & Brewery Workers Union*, No. 15-CV-911 (GHW), 2016 WL 631296, at *3 (S.D.N.Y. Feb. 16, 2016) ("The bar for finding that a union has breached this duty is high."). Accordingly, judicial review of union conduct "'must be highly deferential.'" *Gvozdenovic v. United Air Lines, Inc.*,

933 F.2d 1100, 1106 (2d Cir. 1991) (quoting *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 66 (1991)).

While Plaintiff asserts his manner of arbitration DFR claim under the guise of alleging that the Union engaged in bad faith conduct, he does not provide sufficient factual allegations to support such a claim. Rather, Plaintiff merely lists evidence and arguments that the Union could have presented, but allegedly did not introduce, during the arbitration of his termination and suspension grievances. (Pl.'s Mot., Ex. A, PAC ¶¶ 56–73.) Stripped of the conclusory allegations of bad faith and collusion,[6] however, Plaintiff's argument boils down to his dissatisfaction with the Union for pursuing one line of argument over another during arbitration. In essence, Plaintiff wanted the Union to focus on the possible retaliatory motives behind LSHV's employment decisions whereas, by Plaintiff's own account, the Union believed a due process argument to be more meritorious. (*Id.* ¶ 74.) Although Plaintiff may be dissatisfied with the tactical decision of the Union, such tactical decisions cannot be the basis of a DFR claim unless they are "so egregious [or] so far short of minimum standards of fairness to the employee as to be arbitrary or suggest bad faith." *See Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (internal quotations omitted) (citing *Barr v. United Parcel Serv.*, 868 F.2d 36 (2d Cir. 1989)). As Plaintiff

---

[6] As courts in this district have noted "conclusory allegations without specifying supporting facts to show a union's lack of good faith fail to state a valid claim." *Spielmann v. Anchor Freight. Inc.,* 551 F. Supp. 817, 822 (S.D.N.Y. 1982) (internal quotation marks omitted); *see also Giglietti v. Bottalico*, No. 10-CV-3652 (LTS), 2011 WL 2118749, at *4 (S.D.N.Y. May 26, 2011) (dismissing Plaintiff's duty of fair representation claim where his "theory of violation [was] supported only by conclusory allegations of bad fit and collusion."). Indeed, this Court previously dismissed Plaintiff's claims of collusion between the Union and LSHV, finding that "the bare and conclusory allegation that the Union manifested bad faith by conspiring with the [employer] does not rise above *Twombly's* plausibility threshold." *Sahni I*, 2016 WL 1241524, at * 8 (internal quotation marks omitted) (citing *Bejjani v. Manhattan Sheraton Corp.*, No. 12-CV-6618 (JPO), 2013 WL 3237845, at *11 (S.D.N.Y. June 27, 2013) *aff'd*, 567 F. App'x 60 (2d Cir. 2014)).

readily admits, however, the Union pursued his transfer and suspension grievances all the way through arbitration and presented a due process argument before the arbitrator. (Pl.'s Mot., Ex. A, PAC ¶ 74.) Plaintiff fails to allege how the Union, by pursuing Plaintiff's claims through the entire grievance procedure outlined in the CBA acted either egregiously or "far short of the minimum standards of fairness." *See Dennis v. Local 804*, No. 07-CV-9754, 2009 WL 1473484, at *5 (S.D.N.Y May 27, 2009) ("Plaintiff's obligation to plead sufficient conduct to support an unfair representation claim has been characterized as an enormous burden" (internal quotation marks omitted)); *see also Mussafi v. Fishman*, No. 12-CV-2071 (JGK), 2012 WL 5473874, at *5 (S.D.N.Y. Nov. 12, 2012) ("[A] union's tactical decisions about not presenting certain evidence at an arbitration hearing, even where they might conceivably have affected the outcome of the arbitration . . . indubitably do not rise to the level of bad faith and arbitrariness." (internal quotation marks omitted)).

Finally, to the extent that Plaintiff is asserting a separate and distinct ULP claim against the Union under the National Labor Relations Act ("NLRA"), such a claim would also fail to survive Rule 12(b) review. Unfair labor practice claims fall within the "exclusive jurisdiction" of the National Labor Relations Board ("NLRB")—largely precluding the exercise of jurisdiction by federal courts. *See United Auto., Aerospace & Agr. Implement Workers of Am., Local 33 v. R.E. Dietz Co.*, 996 F.2d 592, 595 (2d Cir. 1993) ("Because the [NLRB] generally has exclusive jurisdiction over unfair labor practice claims, the district court would not have jurisdiction over this claim."); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) ("As a general rule, federal courts do not have jurisdiction over activity which is arguably subject to § 7 or § 8 of the [NLRA] and the must defer to the exclusive competence of the [NLRB]." (internal quotation marks omitted)). Although "federal courts have concurrent jurisdiction with the NLRB to hear

cases involving *both* alleged NLRA violations and claims of breach of collective bargaining agreements," *Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp.*, 803 F.2d 69, 73 (2d Cir. 1986)(emphasis added), this Court does not have jurisdiction to consider a standalone ULP claim. Like its two predecessors, Plaintiff's third and final proposed claim against the Union also fails.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to amend the complaint, which has been construed by this Court as a motion for relief from the judgment, is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 65 and close the case.

Dated: January 30, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

18